MILLEN *v.* THE STATE.

No. 8707.   August 10, 1932.

*Henry O. Farr* and *Colon J. Cogdell,* for plaintiff in error.
*J. T. Grice, solicitor-general,* contra.

Russell, C. J.   Dan Millen, A. J. Jester, and S. G. (referred to in the record as Tom) Day were jointly indicted for the murder of R. W. Bennie.   Millen was tried separately and was found guilty, with a recommendation by the jury to mercy, and the court sentenced him to life imprisonment.   His motion for a new trial was overruled, and he excepted.

It appears from the evidence that the deceased Bennie, the defendant Millen, and the witness Jester lived in a two-room house, Millen and Jester occupying one room together and Bennie staying in the other room alone.   According to the testimony of Jester, on Saturday preceding the Sunday on which the homicide occurred Millen said to him: "Let's knock Bennie out and take his money." Witness told him no, he could not do that, and did not want to have anything to do with it.   On the following day, Sunday, after these three had eaten dinner Millen went off, returning about four-thirty or five o'clock in the afternoon.   Day came back with him.   "When they came back Tom Day walked in there in my room.   I do not know where Millen was then; he was outside somewhere, and Tom walked in there.   Tom Day then went in Benny's room over in the

same building. After Tom Day went in Benny's room I walked out on the back porch down next to Benny's room. From where I was on the porch I could see in Benny's room. I did not go in Benny's room later. I could see Benny and Tom Day in Benny's room. . . While I was on the back porch Tom Day walked in and spoke to him. . . Millen was then on the front side, and then he walked in there. . . He came in the porch that I was on. . . Millen then went in Benny's room. I was then still on the porch. After Millen went in Benny's room I could still see in Benny's room. Tom Day and Millen and Benny were in there. Millen had an ax in his hand. That was what I would call a club-ax. It had a handle in it. . . Benny was close to the right side. After Benny got in the room nothing was said to Benny by anybody. I did not hear anybody say anything. I could have heard it if any one had said anything. Dan Millen then knocked Benny off the box. . . Benny was sitting with his face to the fire. Then when this man [defendant] walked in with the arm to his side; he came in back of Benny like he was going by him. With Benny's face to the fire, if he kept his face to the fire he could not have seen Millen or what Millen was doing. I said he was making like he was going by him, and he turned around and struck him. Millen struck Benny side of the face with an ax, with this same ax. I was on the porch seeing all this. He had the ax in both hands, and struck him side of the head this way [indicating]. He hit him with the back of the ax, the eye of the ax. Benny fell over off the box. Benny did not say anything. Millen and Day did not say anything. After he fell off on the floor Dan Millen took his money out of his pocket, and he hit him two or three licks after he fell on the floor. Those other licks were hit after he fell on the floor. He hit somewhere about the head, with the same ax. What happened after he got through hitting him with the ax was, Millen ran his hand in his pocket, in his right-hand side pocket, in Benny's pocket. He took money out of his pocket."

The material part of the testimony of the witness Reese Hill, as to the statements made to him by Dan Millen, was as follows: "I was confined in jail here at Darien last fall. While I was in jail here at Darien these boys in this case, Dan Millen, Tom Day, and A. J. Jester, were put in jail. . . I heard these three men talking among themselves about this thing and Benny being killed.

Millen said Jester killed the man and tried to put it on him, and Jester said that Millen killed him and said to Millen, 'You killed him and you know you did,' and Dan said, 'No, I didn't.' Tom Day didn't have anything to say at that time. They had this argument in jail. Sometime after this argument I had a talk with Millen; it was in the presence of Jester; they wasn't out of hearing, but Jester was sleeping right by me, a snoring. It was at night. I don't know whether Day heard it or not; he was downstairs in the jail with Millen. I suppose they heard what Millen said. He was down there with him; I was upstairs, and he was downstairs. I was right above them, close to them, on the next floor. As to whether Day was in the same cell Millen was in, he was on the same floor with him; they were on the bottom floor. I don't know whether they were in the same cell or not. That was one night when Jester was snoring. Millen called to me and said that he fixed a way to get some money, and Jester got caught up with and then turned them up. He said that he and Day made it up together and came back to the shanty where they was, and Jester and Benny was there, and that Day went in the room and got to talking to him, and that he went in the room where Day was talking to him, and that he came along and hit him with an ax. That was Dan Millen doing that talking. Millen said that he (Millen) hit him with the ax and Jester wanted to run away, but that Day grabbed him and wouldn't let him run."

■ After a careful and painstaking examination of the testimony, it is very evident that the verdict of guilty was supported by sufficient evidence, if the testimony in behalf of the State was credible in the opinion of the jury. The witness A. J. Jester, in his story, discloses a sordid picture of the defendant murdering the deceased with a club-ax, by blows inflicted before the deceased had an opportunity to defend himself, merely to get the few dollars of wages supposed to be in the pocket of the deceased, and when the deceased was not aware that the defendant was approaching him. There are some of the statements of Jester which do not conform with the blood-stains and blood which were found near a cot, while he says that Dan Millen, the defendant, struck the blows which killed Bennie in front of the fireplace several feet away from where the blood was found. And it appears from other evidence that there was no blood-stain or bloody track such as might have been ex-

pected if the body had been dragged as testified by the State's witness. Nevertheless we can not say that the jury was not authorized to believe the witness. The testimony of Jester was corroborated by that of Reese Hill, who testified that he was placed in jail at the time Dan Millen and A. J. Jester were confined there, and that one night when Jester was snoring loudly the defendant Dan Millen admitted that he made up his mind to get some money by "knocking out" R. W. Bennie, the deceased, who was supposed to have saved a portion of his wages as a turpentine hand. While the circumstances of the alleged offense might to some minds have rendered it quite improbable, still the jury were authorized to believe it. There is nothing to show that the statement of the defendant in confessing his guilt was not voluntary and freely made. No question was raised as to the admissibility of the evidence of confession, but the complaint is made that the court erred in failing to instruct the jury as to the rule which should govern the jury in their consideration of evidence as to a confession.

■ There are several special grounds in the motion for a new trial. In the first ground it is alleged that the charge of the court, to wit, "To this indictment the defendant, Dan Millen, has entered his plea of not guilty; the State says he is guilty; and that makes the issue which you are to try," was error. Considered in connection with the instructions of the court as a whole, the excerpt just quoted is not a misstatement which was confusing or misleading to the jury, or prejudicial to the rights of the defendant. By an indictment the State always, in effect, says that the defendant in an accusation is guilty of the offense charged. When the defendant enters a plea of not guilty, that makes the issue which the jury are empaneled to try. While ordinarily the charge of the court contains the statement that the State in the indictment says that the accused is guilty, followed by the statement that to this indictment the defendant has entered his plea of not guilty, we do not think that the transposition was such error as would authorize the grant of a new trial.

■ The second special ground of the motion for a new trial complains that the court erred in not following the language of § 1036 of the Penal Code, but instead charged the jury as to the defendant's statement as follows: "In criminal cases the defendant is entitled to make a statement in his own behalf. The statement is

not under oath, and the defendant is not subject to cross-examination. That statement is entitled to just such weight, force, and effect as you may think it is entitled to. You may believe it in whole or in part, and you may believe it in preference to the sworn testimony in the case if you think proper to do that." This court and the Court of Appeals have frequently remarked that the best practice in conveying the law of the defendant's statement to the jury is to use the language of the code section, without elimination, transposition, or amendment. However, this court has very frequently held that a new trial would not be warranted merely because the trial court did not, in charging upon the defendant's statement, use the exact language employed in the code, provided the substance of the legal provision was correctly given. We think that when the court told the jury that a defendant is entitled to make a statement in his own behalf, this was equivalent to a statement that the accused had the right to make a statement; for unless he had the right to make a statement, he would not be entitled. Right conveys title and entitles one to enjoy anything to which he has a right. It does not appear that the defendant was prejudiced by the use of the words, "if you think proper to do that," after the statement, "You may believe it [the statement] in whole or in part, and you may believe it in preference to the sworn testimony in the case." Until there is some method of conveying to a court of review the inflection placed upon language used by a trial court, it can not be said that the court may not say to the jury that they may believe the statement in preference to the sworn testimony if they think proper to do that. We say this because it is alleged in the assignment of error that the language in the manner used and taken in its entirety was denying to the defendant his absolute privilege given and granted him by § 1036, and did not permit nor does it permit the court to state that the defendant was merely entitled to make a statement, but makes it mandatory upon the court to instruct the jury that it is a right and privilege, absolute in its nature and character, of the defendant to make such statement in his own defense as he may deem proper to so make, and it is the duty of the jury to give it such force as they think right to give it, and that they may believe such statement in preference to the sworn testimony in the case.

■ The court did not err, as alleged in the third special ground

of the motion for a new trial. In this ground §§ 1028, 1031, and 1032 of the Penal Code are quoted, and it is assigned as error that the court failed to give in charge to the jury the law relating to confessions. It has been repeatedly ruled by the Supreme Court, that although the evidence may tend to show a confession of guilt by the accused, it is not cause for a new trial for the judge to fail to instruct on the subject of confessions, in the absence of a timely and appropriate written request for such instruction.

■ There is no merit in the fourth special ground of the motion for new trial; for proof of the corpus delicti, of itself, may sufficiently corroborate a confession. For this reason, the instruction of the court to the jury that "In felony cases the testimony of an accomplice is not alone of itself sufficient to sustain a conviction, unless such testimony is corroborated by other competent evidence which you do believe, or by facts and circumstances developed by the trial," was fully as favorable to the accused as the evidence warranted. The movant admits that "this is the substantive law and the rule by which the jury should be governed," but insists "that the evidence of such corroboration [accomplice] was only corroborated by the testimony of the witness Reese Hill, who testified as to a confession made by the defendant to him." It is insisted that "in the absence of such legal instruction on the part of the trial court to the jury, relative to their duty as well as the rule by which they should be governed in the consideration of such confession, that this was not such 'competent evidence' as is required by law to corroborate the testimony of such an accomplice." As we understand this assignment of error, the plaintiff in error complains that the court did not instruct the jury "relative to their duty as well as the rule by which they should be governed in the consideration of such confession, that this was not such 'competent evidence,'" etc. This assignment of error is too vague and indefinite to invoke a ruling, and therefore entirely without merit. The assignment does not inform us what "legal instructions" should have been given to the jury, or by what rule the jury should be governed with relation to a confession, nor does it refer to any evidence so as to enable us to judge whether it is such as is required by law to corroborate the testimony of an accomplice.

■ The fifth, sixth, seventh, eighth, and ninth grounds of the motion for a new trial, which complain of excerpts from the charge

set forth in each of these grounds, present nothing which would authorize a reversal of the judgment overruling the motion for a new trial. In each instance it is said: "Movant contends that this is the substantive law and the rule by which the jury should be governed, but that the evidence of such corroboration was only corroborated by the testimony of the witness Reese Hill, who testified as to a confession made by the defendant to him; and in the absence of such legal instruction on the part of the trial court to the jury relative to their duty as well as the rule by which they should be governed in the consideration of such confession, that this was not such 'competent evidence' as is required by law to corroborate the testimony of such an accomplice." In our opinion this assignment, which is common to the fifth, sixth, seventh, eighth, and ninth special grounds of the motion for a new trial, fails to show error or inapplicability to the evidence in the case on the part of any excerpts from the charge of which complaint is made. The court therefore did not err in overruling these grounds.

Counsel for the plaintiff in error, with very commendable skill and diligence, apparently exhausted every effort to take advantage of every doubt in favor of their client. That there may exist in our minds, as judges, a doubt as to whether the accused or the witness, Jester, struck the blows which ended the life of the deceased, Bennie, may be admitted for the sake of argument. But juries, and not judges, are the exclusive triors of facts. The prerogative of a jury to ascertain and declare the truth from the evidence is exclusive. It can not be said in the case at bar that the evidence does not authorize the verdict, nor can it be said that the court erred in his instructions to the jury.

*Judgment affirmed. All the Justices concur.*